Andrew J. Christensen (SBN: 260748)
Attorney at Law
1970 Broadway, Suite 550
Oakland, CA 94612
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Creditors
Bosco Kante and Maya Kante

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In the Matter of: | Case No: 17-41704 CN13 |
| Rosemary Greene | Chapter 13 |
| | Objection to Confirmation of Chapter 13 Plan |
| Debtor | Confirmation Hearing |
| | Date: TBD |
| | Time: |
| | Room: |
| | Judge: |

**OBJECTION TO CONFIRMATION**

Creditors Bosco and Maya Kante object to confirmation of the Debtor's Amended Chapter 13 Plan filed on 8/14/2017, docket number 26, under 11 U.S.C. §1325(a) for proposing the plan in bad faith, for filing the petition in bad faith, the inability to fund a plan, and for not complying with the best interest of creditors test.

Bosco and Maya Kante (hereinafter "Creditors") entered into a series of seven written contracts with Debtor Rosemary Greene regarding leasing, managing, fixing, renting, and subleasing the Debtor's two real properties. These transactions began in 2007, and continue until now. Creditors resided in two of the Greenridge units for a period of time. The most recent agreements were signed in 2014 & 2015. Under these agreements, the Creditors were leasing and managing both properties and running a successful rental business.

In June 2017, the Debtor wrongfully breached the agreements, changed the locks on the property, took possession of the Creditors' furniture in the four units, and effectively destroyed the Creditors' rental business. This was the crowning wrongful act in a long history of willful misconduct by the Debtor that amounts to a long list of intentional torts, including fraud, wrongful eviction, conversion, and breach of contract, to name just a few.

The Creditors have an unsecured claim in this case that was not listed in the schedules, nor properly accounted for in the proposed chapter 13 plan. The Creditors are working to prepare the proof of claim now, but it is estimated that the claim will be no less than $1.2 million.

### 1. The Plan is Proposed in Bad Faith. §1325(a)(3)

The plan should not be confirmed because it was not proposed in good faith. Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law." To determine whether a plan has been proposed in bad faith the Court must review the "totality of the circumstances." *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999). In *Leavitt*, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his plan or unfairly manipulated the Code, (2) the debtor's history of filings and dismissals, (3) whether the debtor intended to defeat state court litigation, and (4) whether egregious behavior is present.

Here, the plan has been proposed in bad faith because the Debtor has misrepresented many facts in the schedules and plan to hide her recent wrongful conduct in locking out the Creditors, taking their furniture, and attempting to steal their rental business and use that income to fund a plan that does not provide for any payment to the Creditors. The debt owed to the Creditors was purposely omitted from the schedules and plan because if the plan were to properly provide for the claim, it would be patently unfeasible and would never be confirmed. This behavior in locking out the Creditors from the Greenridge property, taking possession of the furniture, and attempting to fund the plan with the stolen items is best described as "egregious" under the test in *Leavitt*.

The plan is also proposed in bad faith because it is a loan modification plan, and it is highly unlikely that the Debtor will qualify for a loan modification on a $903,000 mortgage when her only actual income is $1,760 in social security and $854.25 in pension benefits. The rest of the income listed in the schedules is speculative rental income and the properties are currently vacant. Creditors helped the Debtor with her loan modification efforts since 2009, and are knowledgeable about that history and the facts and that modification is highly unlikely.

"[U]nlawful acts are included within the broader scope of actions which are not done in good faith. The good faith test of subparagraph (3) demonstrates the absence of deceit and wrongful intention toward debtor's creditors and reflects compliance with equity and moral standards rather than statutory law." *In re Wiggles*, 7 B.R. 373, 379-80 (Bankr. N.D. Ga. 1980). In this case, Debtor's plan has been proposed in a manner "forbidden by law" because the Debtor states that she plans to rent out the four units of the Greenridge property and the Hansom property to tenants, which means she is unlawfully using the Creditors' furniture in both properties that the Debtor wrongfully converted when she locked the Creditors out of the property. The Debtor is proposing to earn her rental income with stolen furniture, after willfully and maliciously breaching the contract with the Creditors and essentially attempting to take over their rental business.

The primary purpose for filing this plan was to stall the foreclosure sale on a property that the Debtor cannot afford, end the Creditors tenancy, and to frustrate the Creditors ability to recovery the furniture that the Debtor wrongfully took possession of when she locked the Creditors out of the Greenridge property.

There are also many misrepresented facts in this case related to the plan and petition, including that both properties are undervalued. The Hansom property is worth approximately $950,000 based on recent comparable sales in the neighborhood, but was only listed as valued at $775,000 in the schedules. The Greenridge property is worth about $1.4 million, but listed in the schedules at $900,000.

## 2. Debtor is Unable to Fund the Plan. §1325(a)(6)

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." The Debtor cannot afford to make the plan payments in this case because her only actual income is $1,760 in social security and $854.25 in pension benefits. The schedules list the Debtor's employment as a real estate agent, but do not list any income from that work historically, or currently, or projected. The rental income in Schedule I is speculative, with the properties having been vacant for several months. The Debtor has stopped paying the mortgage on the Greenridge property, and the bank has objected to confirmation. It is doubtful that the Debtor can fund the plan, or pay the secured mortgage obligations in this case.

### 3. The Petition is Filed in Bad Faith: §1325(a)(7)

Section 1325(a)(7) requires that "the action of the debtor in filing the petition was in good faith." This bankruptcy petition was filed in bad faith in an effort by the Debtor to continue her willful taking and conversion of the Creditors property and rental business, and to protect herself from the consequences of her actions. The schedules are materially inaccurate in many respects. These inaccuracies are willful, and calculated to avoid automatic disqualification for chapter 13 relief.

The petition was also filed in bad faith to stop a foreclosure sale on the Debtor's home because it is likely impossible that the Debtor will qualify for a loan modification on a $903,000 mortgage when her only income is $1,760 in social security and $854.25 in pension benefits. The rest of the income listed in the schedules is speculative rental income. The properties are empty since the Debtor locked out the Creditors and took possession. She has had almost two months to find tenants, and has not done so. This plan was filed to stall an inevitable foreclosure. There is virtually no real chance that she will qualify for a modification with no actual track record of rental income.

The Debtor did not list the Creditors as creditors in Schedule F. This shows the petition was filed in bad faith because she has a series of seven express contractual agreements with Creditors for rental, leasing, and remodeling services; four of these were

listed as executory contracts to be rejected, but there were no associated amounts for a debt claim. While it is likely that the Debtor will dispute the amount of the Creditors' claim in this case, it is certain that the Debtor knows there is a claim of an amount significant enough to render her unqualified for chapter 13 or unable to fund or confirm a chapter 13 plan. This is because the Creditors sent regular statements and profit and loss reports for the rental properties, so the Debtor knew the progress of the debt she owed. The Creditors sent monthly profit and loss statements to the Debtor from December 2016 to May 2017. The last few of those months the statements were sent by certified mail, and copies emailed to her attorney.

The Debtor also knows that she willfully breached the contracts with the Creditors when she locked them out of the rental property and took possession of at least $50,000 worth of the Creditors' furniture in the four units of the Greenridge property. This furniture was not listed on Schedule B as an asset of the Debtor, nor on Schedule F as a debt owed to the Creditors.

The Creditors are only listed in part 3 of Schedule F as an address to be notified for a debt already listed in part one or part two, but the Creditors are not listed as creditors in part one or two.

The Greenridge property is significantly undervalued. The Debtor lists the value at $900,000 in the schedules, but as recently as May 2017 offered to sell the property to Creditors for $1.4 million, which is the value that both Debtor and the Creditors believed to be accurate.

On page 37 of the Debtor's schedules, docket #15, in an attachment to Schedule J titled "Addendum to Rosemary Greene Schedules," it states in reference to the rental income from the properties: "Nor does she have records in her control to show where those funds have gone." This statement is false because the Creditors have provided numerous accounting statements to her regularly over the course of 10 years accounting for all funds and financials related to the contracts. Bosco Kante has mailed and emailed profit and loss statements to the Debtor each month since December 2016 until the lockout occurred.

The Addendum goes on to state: "When debtor obtains access to the financial records of the rental properties, the schedules may require amendment." This shows the petition was filed in bad faith because they could have been more accurate, but were purposely vague and inaccurate because otherwise, it would be obvious that she does not qualify for chapter 13 relief.

### 4. The Plan Fails the Best Interests of Creditors Test. §1325(a)(4)

The schedules list the Greenridge property value as $900,000, with $191,665.23 in total secured claims, which leaves $708,334.77 in equity. The Debtor claimed an exemption of $25,175 under 703.140(b)(5). This leaves $683,159.77 as non-exempt equity available for distribution to creditors in the plan according to the §1325(a)(4) liquidation analysis. However, the plan only provides for distribution of $35,094.22 in unsecured claims.

However, the property has been significantly undervalued in the schedules. The property is worth at least $1.4 million, which leaves about $1,183,159.80 million in nonexempt equity that would be distributed to creditors in a chapter 7 case.

The Creditors have not completed the proof of claim for this case yet, but it is estimated that it will be no less than $1.2 million. Section 2.12 of the Amended Chapter 13 Plan provides that this will be a 100% plan, but only lists $35,094.22 in unsecured claims, which completely omits the Creditors' claim. Once the claim is filed, the plan cannot be confirmed.

Therefore, the Creditors respectfully request that plan confirmation be denied.

Dated: August 29, 2017         /s/ Andrew J. Christensen
                               Andrew J. Christensen
                               Attorney for Creditors

| | |
|---|---|
| 1 | Andrew J. Christensen (SBN: 260748) |
| | Attorney at Law |
| 2 | 1970 Broadway, Suite 550 |
| | Oakland, CA 94612 |
| 3 | Tel: (510) 761-7183 |
| | Fax: (510) 680-3430 |
| 4 | Andrew@CaliforniaHomeLawyer.com |

Attorney for Creditors
Bosco Kante and Maya Kante

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Case No: 17-41704 CN13 |
| Rosemary Greene | Certificate of Service |
| Debtor | |

I, Andrew J. Christensen, declare that I am a citizen of the United States, over 18 years of age, employed in Alameda County, and not a party to the within action. My business address is 1970 Broadway, Suite 550, Oakland, CA 94612. On August 29, 2017 I served the following document on the parties listed below by email and by first class mail according to our ordinary business practices, in a sealed envelope, with paid postage, in Oakland California. **Objection to Confirmation of Amended Chapter 13 Plan.**

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on the following date at Oakland, California.

Dated: August 29, 2017

Andrew J. Christensen
Attorney At Law

First Class Mail:

Rosemary Green
PO Box 2344
Oakland, CA 94614

1674 N Shoreline Blvd. #140
Mountain View, CA 94043-1375
(650) 694-4700
Email: ecf@moranlaw.net

Electronic Service:

Cathleen Cooper Moran
Renee C. Mendoza
Moran Law Group, Inc.

United States Trustee

Martha Bronitsky, Chapter 13 Trustee