Andrew J. Christensen (SBN: 260748)
Attorney at Law
1970 Broadway, Suite 550
Oakland, CA 94612
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Creditors
Bosco Kante and Maya Kante

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In the Matter of:<br><br>Rosemary Greene<br><br>Debtor | Case No: 17-41704 CN13<br><br>Chapter 13<br><br>Amended Objection to Confirmation of Chapter 13 Plan<br><br>Confirmation Hearing<br><br>Date: 12/19/2017<br>Time: 1:30 pm<br>Room: 215<br>Judge: Hon. Charles Novack |

**AMENDED OBJECTION TO CONFIRMATION**

Creditors Bosco and Maya Kante object to confirmation of the Debtor's Second Amended Chapter 13 Plan filed on 10/16/2017, docket number 42, under 11 U.S.C. §1325(a) for proposing the plan in bad faith, for filing the petition in bad faith, the inability to fund a plan, and for not complying with the best interest of creditors test. This Amended Objection is supported by the attached Declarations of Bosco and Maya Kante, and Exhibits A through V.

Bosco and Maya Kante (hereinafter "Creditors") entered into a series of seven written contracts with Debtor Rosemary Greene regarding leasing, fixing, renting, and subleasing the Debtor's two real properties. These transactions began in 2007, and continue until now. Creditors resided in two of the Greenridge units for a period of time. The most recent agreements were signed in 2014 & 2015. Under these agreements, the Creditors were leasing

1

both properties and running a successful rental business. [Kante Decl. and Exhibits A, O, P, Q, R, S].

In June 2017, the Debtor wrongfully breached the agreements, changed the locks on the property, took possession of the Creditors' furniture in the four units, and effectively destroyed the Creditors' rental business. [Kante Decl. pages 4-5, and Exhibits K, L, M]. This was the crowning wrongful act in a long history of willful misconduct by the Debtor that amounts to a long list of intentional torts, including fraud, wrongful eviction, conversion, and breach of contract, to name just a few.

The Creditors have an unsecured claim in this case that was not listed in the schedules, nor properly accounted for in the proposed chapter 13 plan. The proof of claim filed by the Kantes in this case is for $1,429,980. [Proof of Claim 5-1].

### 1. The Plan is Proposed in Bad Faith. §1325(a)(3)

The plan should not be confirmed because it was not proposed in good faith. Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law." To determine whether a plan has been proposed in bad faith the Court must review the "totality of the circumstances." *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999). In *Leavitt*, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his plan or unfairly manipulated the Code, (2) the debtor's history of filings and dismissals, (3) whether the debtor intended to defeat state court litigation, and (4) whether egregious behavior is present.

Here, the plan has been proposed in bad faith because the Debtor has misrepresented many facts in the schedules and plan to hide her recent wrongful conduct in locking out the Creditors, taking their furniture, stealing their rental business, and using the stolen business's income to fund a plan that does not provide for any payment to the Creditors. The lockout is described in detail in the attached Declaration of Bosco and Maya Kante, pages 4 and 5, and Exhibits K, L, M. The Debtor wrongfully breached the express written lease and contract agreements, even after being warned by the Kante's attorney. This behavior in locking out

the Creditors from the Greenridge property, taking possession of the furniture, and attempting to fund the plan with the stolen items is best described as "egregious" under the test in *Leavitt*.

The debt owed to the Creditors was purposely omitted from the schedules and plan because if the plan were to properly provide for the claim, it would be patently unfeasible and would never be confirmed. Ms. Greene undoubtedly knew that she owed a large debt to the Kantes. This is clear from communications between the parties where Ms. Greene stated that she knew she owed money, and would try to pay, and that each new contract and lease between the parties described a clear dollar amount that was the accrued amounts owed under prior agreements. [Exhibits B, I, H, N, O, P, Q, R, S, T, U, V]. Ms. Greene has repeatedly promised to pay her debt to the Kantes through the sale of the Greenridge property, but has never followed through. [Exhibit U, V]. While the total amount of the debt is a matter of dispute, there is no doubt that Ms. Green had acknowledged that she owed a debt of well over six figures to the Kantes. Failure to list any dollar amount for this claim in the schedules or plan is willful bad faith when she knew of the debt, and when listing it would obviously prevent confirmation of the plan based on the liquidation analysis.

"[U]nlawful acts are included within the broader scope of actions which are not done in good faith. The good faith test of subparagraph (3) demonstrates the absence of deceit and wrongful intention toward debtor's creditors and reflects compliance with equity and moral standards rather than statutory law." *In re Wiggles*, 7 B.R. 373, 379-80 (Bankr. N.D. Ga. 1980). In this case, Debtor's plan has been proposed in a manner "forbidden by law" because the Debtor states that she plans to rent out the four units of the Greenridge property and the Hansom property to tenants, which means she is unlawfully using the Creditors' furniture in both properties that the Debtor wrongfully converted when she locked the Creditors out of the property. The Debtor is proposing to earn her rental income with stolen furniture, after willfully and maliciously breaching the contract with the Creditors and taking over their rental business.

The primary purpose for filing this plan was to stall the foreclosure sale on a property that the Debtor cannot afford, end the Creditors tenancy, and to frustrate the Creditors ability

3

to recover the furniture that the Debtor wrongfully took possession of when she locked the Creditors out of the Greenridge property.

There are also many misrepresented facts in this case related to the plan and petition, including the undervaluation of both properties. The Hansom property is worth approximately $950,000 based on recent comparable sales in the neighborhood, but its value was only listed at $775,000 in the schedules. Based on comparable sales and our own intimate knowledge of the Greenridge property's condition as tenants, 8009 Greenridge Dr. was worth approximately $1.4M, not the $900,000.00 listed in the schedules by Mrs. Greene as of the filing date of June 30, 2017.

Furthermore, Mrs. Greene offered to sell 8009 Greenridge to the Kantes for $1.4 million in May 2017, with both Mrs. Greene and her representative real estate broker Mark Attarha stating that they believed the property's fair market value to be $1.4 million dollars. The offer letter expressly stating their professional opinions of the value of the property as $1.4 million, and the offer to sell it to Kantes for that price is attached as Exhibit G. This evidence shows without doubt that Debtor Ms. Greene knew for a fact that the property is worth half a million dollars more than what she listed it at in the schedules, just one month after this written offer. Such behavior is a bad faith misrepresentation of facts, and egregious misconduct under the first and fourth prongs of the *Leavitt* totality of the circumstances test.

The Hansom property is also undervalued in knowing bad faith. Mrs. Greene is a licensed real estate broker who continues to be active in the field. As listing agent, Mrs. Greene sold a neighboring property (7965 Hansom Dr) which is similar to her own for $930k just one year ago [Exhibit F: 7965 Hansom Drive Listing]. Values have continued to increase in the neighborhood, a fact Mrs. Greene has expressed to the Kantes on multiple occasions. Thus, Mrs. Greene's actions in undervaluing her properties were deliberate and calculated to prevent her creditors from collecting what is owed to them. Based on comparable sales and our own intimate knowledge of the Hansom property's condition as tenants, 8000 Hansom Dr. is worth over $950,000.00, not the $775,000.00 listed in the schedules by Mrs. Greene.

## 2. Debtor is Unable to Fund the Plan. §1325(a)(6)

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." The Debtor cannot afford to make the plan payments in this case because her only actual income is $1,760 in social security and $854.25 in pension benefits. The Kantes have reason to believe that the units are not all occupied as claimed in the amended schedules. It is doubtful that the Debtor can fund the plan, or pay the secured mortgage obligations in this case, based on the Debtor's long history of defaults, and the Kantes long history of rescuing the Debtor from these defaults. [Kante Decl. 1:27-2:17, Exhibits B, C, D, E].

## 3. The Petition is Filed in Bad Faith: §1325(a)(7)

Section 1325(a)(7) requires that "the action of the debtor in filing the petition was in good faith." This bankruptcy petition was filed in bad faith in an effort by the Debtor to continue her willful taking and conversion of the Creditors property and rental business, and to protect herself from the consequences of her actions. The schedules are materially inaccurate in many respects. These inaccuracies are willful, and calculated to avoid automatic disqualification for chapter 13 relief.

The Debtor did not list the Creditors as creditors in Schedule F. This shows the petition was filed in bad faith because she has a series of seven express contractual agreements with Creditors for rental, leasing, and remodeling services; four of these were listed as executory contracts to be rejected, but there were no associated amounts for a debt claim. The Creditors were only listed in part 3 of Schedule F as an address to be notified for a debt already listed in part one or part two, but the Creditors are not listed as creditors in part one or two.

While it is likely that the Debtor will dispute the amount of the Creditors' claim in this case, it is certain that the Debtor knows there is a claim of an amount significant enough to render her unqualified for chapter 13 or unable to fund or confirm a chapter 13 plan. [Exhibits B, I, H, N, O, P, Q, R, S, T, U, V]. This is because the Creditors sent regular statements and profit and loss reports for the rental properties, so the Debtor knew the

5

progress of the debt she owed. [Exhibits H, I, U]. The Creditors sent monthly profit and loss statements to the Debtor from December 2016 to May 2017. The last few of those months the statements were sent by certified mail, and copies were emailed to her attorney. [Exhibit I].

The Debtor also knows that she willfully breached the contracts with the Creditors when she locked them out of the rental property and took possession of at least $50,000 worth of the Creditors' furniture in the four units of the Greenridge property and the Hansom property. This furniture was not listed on Schedule B as an asset of the Debtor, nor on Schedule F as a debt owed to the Creditors. The lockout is described in detail in the attached Declaration of Bosco and Maya Kante, pages 4 and 5, and Exhibits K, L, M. This was an egregious and willful violation of the parties' contracts and leases, and of state law protections against wrongful evictions, and has made Ms. Greene liable for tort damages of many hundreds of thousands of dollars. [Proof of Claim 5-1].

Furthermore, both properties are knowingly undervalued in willful bad faith by the Debtor as described above. The Debtor lists the value at $900,000 in the schedules, but as recently as May 2017 offered to sell the property to Creditors for $1.4 million, which is the value that both Debtor and the Creditors believed to be accurate. The Hansom property is also undervalued by at least $175,000 based on the Debtor's own work as a real estate agent selling similar properties in the neighborhood as recently as one year ago. [Exhibits F and G].

On page 37 of the Debtor's schedules, docket #15, in an attachment to Schedule J titled "Addendum to Rosemary Greene Schedules," it states in reference to the rental income from the properties: "Nor does she have records in her control to show where those funds have gone." This statement is false because the Creditors have provided numerous accounting statements to her regularly over the course of 10 years accounting for all funds and financials related to the contracts. Bosco Kante has mailed and emailed profit and loss statements to the Debtor each month since December 2016 until the lockout occurred. [Exhibits H, I, U].

The Addendum goes on to state: "When debtor obtains access to the financial records of the rental properties, the schedules may require amendment." This shows the petition was

6

filed in bad faith because the schedules could have been more accurate, but were purposely vague and inaccurate to disguise the fact that she does not qualify for chapter 13 relief.

### 4. The Plan Fails the Best Interests of Creditors Test. §1325(a)(4)

The schedules list the Greenridge property value as $900,000, with $191,665.23 in total secured claims, which leaves $708,334.77 in equity. The Debtor claimed an exemption of $25,175 under 703.140(b)(5). This leaves $683,159.77 as non-exempt equity available for distribution to creditors in the plan according to the §1325(a)(4) liquidation analysis. However, the plan only provides for distribution of $35,094.22 in unsecured claims, and fails entirely to list any portion of Kante's claim for $1,429,980. This plain fails the liquidation analysis even based on the scheduled property values. However, the Debtor has willfully and knowingly in bad faith undervalued the properties by over half a million dollars.

Mrs. Greene knew the Greenridge property is worth $1.4 million, and not the $900,000 listed in the schedules because she offered to sell it to the Kantes for $1.4 million in May 2017, with both Mrs. Greene and her representative real estate broker Mark Attarha stating that they believed the property's fair market value to be $1.4 million dollars. The offer letter expressly stating their professional opinions of the value of the property as $1.4 million, and the offer to sell it to Kantes for that price is attached as Exhibit G. At the true value of $1.4 million, the liquidation analysis leaves about $1,183,159.80 million in nonexempt equity that would be distributed to creditors in a chapter 7 case for this property alone.

The Hansom property is also undervalued by $175,000. Mrs. Greene is a licensed real estate broker who sold a neighboring property (7965 Hansom Dr) which is similar to her own for $930k just one year ago [Exhibit F]. Hansom Dr. is worth over $950,000.00, not the $775,000.00 listed in the schedules. Therefore, there is another $175,000 in understated value that should be paid to creditors in the plan under the liquidation test.

For the reasons stated here above, the Creditors respectfully request that plan confirmation be denied.

Dated: 11/8/ 2017           /s/ Andrew J. Christensen
                                                      Andrew J. Christensen
                                                      Attorney for Creditors

Andrew J. Christensen (SBN: 260748)
Attorney at Law
1970 Broadway, Suite 550
Oakland, CA 94612
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Creditors
Bosco Kante and Maya Kante

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In the Matter of: ) | Case No: 17-41704 CN13 |
| ) | |
| Rosemary Greene ) | Certificate of Service |
| ) | |
| Debtor ) | |

    I, Andrew J. Christensen, declare that I am a citizen of the United States, over 18 years of age, employed in Alameda County, and not a party to the within action. My business address is 1970 Broadway, Suite 550, Oakland, CA 94612. On November 8, 2017 I served the following document on the parties listed below by first class mail according to our ordinary business practices, in a sealed envelope, with paid postage, in Oakland California. **Amended Objection to Confirmation of Second Amended Chapter 13 Plan, Declaration of Bosco and Maya Kante in Support, and Exhibits A-V.**

    I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on the following date at Oakland, California.

Dated: November 8, 2017

                                    Andrew J. Christensen
                                    Attorney At Law

First Class Mail:

| | |
|---|---|
| Rosemary Green | 1674 N Shoreline Blvd. #140 |
| PO Box 2344 | Mountain View, CA 94043-1375 |
| Oakland, CA 94614 | (650) 694-4700 |
| | Email: ecf@moranlaw.net |

Electronic Service:

| | |
|---|---|
| Cathleen Cooper Moran | United States Trustee |
| Renee C. Mendoza | |
| Moran Law Group, Inc. | Martha Bronitsky, Chapter 13 Trustee |

8